___

**SO ORDERED,**



**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| ASHLEY NICOLE MOSBY, | ) | Case No.: | 21-11614-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 7 |

| | | | |
|---|---|---|---|
| THE HUNTINGTON NATIONAL BANK, | ) ) ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | A.P. No.: | 21-01028-JDW |
| | ) | | |
| ASHLEY NICOLE MOSBY, | ) | | |
| | ) | | |
| Defendant. | ) | | |

1

## MEMORANDUM OPINION

This adversary proceeding came before the Court for trial on July 14, 2022 on the *Complaint* filed by The Huntington National Bank against the debtor Ashley Nicole Mosby.[1] The issue is whether a loan owed by the debtor to the bank is nondischargeable due to the debtor's failure to disclose that she planned to rent the collateral to others using TURO. The Court admitted documents into evidence, heard testimony from witnesses, and arguments from counsel. The Court finds and concludes that the bank has failed to prove the necessary element of reliance, and the debt is therefore dischargeable. Judgment will be entered in favor of the debtor-defendant.

## I.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A) and (I). The parties agree that this Court has jurisdiction to enter a final judgment.[2]

---

[1] (A.P. Dkt. # 1).
[2] (A.P. Dkt. # 15, p. 2).

## II.  FINDINGS OF FACT[3]

On January 16, 2020, the debtor purchased a 2020 Dodge Challenger for $36,807.10.  The purchase was financed by the bank.  The parties entered into a loan agreement, which provided that the vehicle would serve as collateral for the loan.  The debtor later defaulted on the loan, and the bank repossessed the vehicle.  The vehicle sold at auction for $25,200.00.  The outstanding balance of the loan at that time was $38,020.83, leaving a deficiency of $12,820.83, plus expenses related to the repossession and sale of the vehicle.

The debtor then filed this chapter 7 case.  The bank contends the deficiency balance should not be discharged because the debtor obtained the loan through false pretenses or a false representation and/or actual fraud by not disclosing her intended use of the vehicle, which was to lease it for profit on a short-term basis.

This case turns on a few critical facts related to the debtor's disclosures and the bank's loan underwriting.  The first page of the loan agreement includes a section where a box was to be checked indicating how the debtor intended to use the collateral.[4]  The options were "consumer (personal, family, or household use)[,] business[, or] farming purposes."  It is unclear whether the

---

[3] To the extent any findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[4] (Ex. 1, p. 1).

dealership should have entered the information or whether the debtor was expected to handwrite it. Regardless, no box was checked.[5]

On page three of the same document, the loan agreement includes a preprinted section entitled "Use of the collateral."[6] Specifically, the fourth term of use includes a representation:

> That you own the collateral and will not sell, transfer, grant a license in, lease or dispose of all or part of the collateral, or allow any lien, encumbrance or security interest other than ours to be granted, placed or filed on the collateral or title to the collateral.[7]

The debtor signed the loan agreement on page five.[8]

At trial, the debtor testified that she always intended "to do a business" when she bought the vehicle. She testified that she purchased the vehicle to lease it to others using TURO, which is an online service connecting vehicle owners with individuals seeking short-term rentals. The debtor leased the vehicle through TURO until it was repossessed by the bank.

Mr. David Esakov, the bank's witness, testified that the bank would not have made the loan had it known of the debtor's intent to lease the vehicle. But at no time was Mr. Esakov involved in the lending process. The preprinted loan documents were filled in and signed at the car dealership where the

---

[5] *Id.*
[6] *Id.* at p. 3.
[7] *Id.*
[8] *Id.* at p. 5.

4

vehicle was purchased, and the documents were then sent to someone else at the bank.  Further, Mr. Esakov's conclusion was undercut by his credible testimony regarding his experience with the bank's underwriting process.  He explained that the decision whether to make a loan involves the consideration of several factors, including a potential borrower's credit history, occupation, the collateral's value, state lien laws, and the location of the collateral.  Mr. Esakov further testified that none of the factors weighed against the debtor. Most importantly, Mr. Esakov testified that when no box from page one of the loan agreement is checked to indicate how the collateral would be used, then the bank does not rely on or consider that category in deciding whether to make the loan.  Given that no box was checked here, the bank did not consider the use of the vehicle as a deciding factor.  Instead, because all of the factors were in the debtor's favor, the bank accepted the incomplete loan agreement and funded the loan.

### III.  CONCLUSIONS OF LAW

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  A creditor must prove by a preponderance of the evidence

5

that a debt should be excepted from discharge.[9] Discharge exceptions are "to be narrowly construed in favor of the debtor since the aim of the Bankruptcy Code is to give the debtor a fresh start."[10]

The Supreme Court of the United States has distinguished between "actual fraud" and "false pretenses or false representations," leaving two paths to nondischargeability under Section 523(a)(2)(A).[11] Here, the bank argues that the debt is nondischargeable under both categories, even though "[s]atisfaction of the elements of either path is sufficient."[12]

### A.    Actual Fraud

The United States Court of Appeals for the Fifth Circuit has outlined the elements for nondischargeability due to actual fraud when a representation is made by the debtor.[13] Those elements are:

> (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.[14]

---

[9] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).
[10] *Miller v. Abrams (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (citing *Tex. Lottery Comm'n v. Tran*, 151 F.3d 339, 342 (5th Cir. 1998)).
[11] *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356, 359-60 (2016).
[12] *Mid-South Maint., Inc. v. Burk (In re Burk)*, 583 B.R. 655, 665 (Bankr. N.D. Miss. 2018).
[13] *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).
[14] *Id.* (footnote omitted) (quoting *Keeling v. Roeder (In re Roeder)*, 61 B.R. 179, 181 (Bankr. W.D. Ky. 1986)). In 2016, the Supreme Court held that actual fraud may be established without a representation by the debtor. *Ritz*, 578 U.S. at 359. More recently, the Fifth Circuit recognized that even post-*Ritz*, the traditional elements for actual fraud apply in cases where a representation was made. *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393,

### *1.    The debtor made a representation.*

The first element for actual fraud under these facts is whether the debtor made a representation.[15] While no box was checked on page one of the loan agreement regarding use of the vehicle, the debtor did make a representation when she signed the loan agreement that included terms of use prohibiting a lease of the vehicle.[16] As the Supreme Court of Mississippi has recently reiterated, "[i]t is well established that 'a person is charged with knowing the contents of any document that he [or she] executes.'"[17] Under Mississippi law, the debtor is charged with the knowledge of the lease prohibition, and, consequently, represented that she would not lease the vehicle.

### *2.    At the time the representation was made, the debtor knew the representation was false.*

The second element is whether at the time the representation was made, the debtor knew the representation was false.[18] Here, the debtor testified that when she bought the vehicle, she always intended "to do a business" by leasing

---

398 n.1 (5th Cir. 2017) (recognizing that while a false representation is not required to show that actual fraud occurred, "actual fraud can still be proven by showing that the debtor in fact made a false representation.").

[15] *RecoverEdge L.P.*, 44 F.3d at 1293.
[16] (Ex. 1, p. 1, 3).
[17] *Cascio v. Cascio Invs., LLC*, 327 So. 3d 59, 69 (Miss. 2021) (quoting *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 (Miss. 2002)); *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 265 (5th Cir. 2005) (quoting *Russell*, 826 So. 2d at 726) (quoting *Tel-Com Mgmt., Inc. v. Waveland Resort Inns, Inc.*, 782 So. 2d 149, 153 (Miss. 2001)).
[18] *RecoverEdge L.P.*, 44 F.3d at 1293.

7

it through TURO. Because she is deemed to have known of the lease prohibition covenant in the loan agreement, and because she knew when she signed the loan agreement that she intended to lease the vehicle for commercial purposes, the second element is also satisfied.

### 3. *The debtor made the representation with the intention and purpose to deceive the creditor.*

The third element is whether the debtor made the representation with the intention and purpose to deceive the creditor.[19] As discussed above, the debtor was "charged with knowing" about the lease prohibition when she signed the loan agreement.[20] Further, she testified at trial that she intended to lease the vehicle through TURO when she bought it and signed the loan documents. But based on the debtor's credible testimony, it is questionable whether she had any intent to deceive the bank. She never told anyone she would not lease the vehicle, and it appears it was never discussed. But just as she is charged with the knowledge of what was contained in the loan documents that she signed, she may be charged with intentionally deceiving the bank because she actually knew she intended to lease the vehicle. The Court need not reach a conclusion on this issue, however, because the bank has failed to prove the next element.

---

[19] *Id.*
[20] *Cascio*, 327 So. 3d at 69.

### *4.   That the creditor relied on the representation.*

The reliance element is where the claim fails.  The first page of the loan agreement included a box to indicate how the collateral would be used, either for consumer, business, or farming purposes.[21]  No box was checked.[22]  Mr. Esakov was clear that when no boxes are checked, the bank does not rely on collateral use to determine whether to make the loan.  Instead, Mr. Esakov explained that the bank would examine a potential borrower's credit history, occupation, the collateral's value, state lien laws, and the location of the collateral.  All of these factors were in the debtor's favor, and the bank funded the loan.  This testimony is bolstered by the objective fact that the bank could have insisted that the collateral use section be completed before funding the loan.  The bank did not do so, a further indication that it was satisfied with debtor's scores on all other underwriting measures.  Under the unique facts and circumstances of this case, the bank is unable to show reliance and the actual fraud claim fails here.

### B.   False Pretenses or a False Representation

The debt may also be nondischargeable if an objecting creditor shows by a preponderance of the evidence that the debtor obtained the loan through false

---

[21] (Ex. 1, p. 1).
[22] *Id.*

pretenses or a false representation.[23] The elements under this path are "(1) [a] knowing and fraudulent falsehood[], (2) describing past or current facts, (3) that [was] relied upon by the other party."[24] Again, the claim fails here due to a lack of reliance.

## IV.　CONCLUSION

The bank had the burden to prove by a preponderance of the evidence that this debt was nondischargeable either due to actual fraud or false pretenses or a false representation.[25] Both of those claims require a showing of reliance by the bank. The bank's witness made clear that because the debtor's disclosures were incomplete as to vehicle use, the bank relied on other factors when making its underwriting decision. Those factors all weighed in the debtor's favor and there was no assertion or evidence that she misrepresented anything related to those factors. Rather than require full disclosure, the bank instead funded the loan and therefore has not shown reliance.

The bank does hold a general unsecured claim for the deficiency balance. That claim is due to be treated the same as all other general unsecured claims

---

[23] 11 U.S.C. § 523(a)(2)(A).
[24] *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992). The Fifth Circuit treats "false pretenses [or a] false representation" as a single claim. *RecoverEdge L.P.*, 44 F.3d at 1293-93.
[25] *Grogan*, 498 U.S. at 286.

10

in the bankruptcy case, and the bank is entitled to receive a *pro rata* distribution on that claim, if there is a distribution in this case. At the conclusion of the case, the remainder of the claim is dischargeable.

A separate final judgment will be entered in favor of the debtor pursuant to Rule of Bankruptcy Procedure 7058.

##END OF OPINION##